UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

APR 1 2 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF MO**
**ST. LOUIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **4:18CR308 CDP/SPM** |
| | ) |
| SCOTT MORRIS, | ) |
| | ) |
| Defendant. | ) |

**INDICTMENT**

The Grand Jury charges that:

**COUNTS I-IV**
**(Wire Fraud)**

A.    Introduction

1.    Company "GI" is a customer service management business with offices in Town
and Country, Missouri, in the Eastern District of Missouri.  GI has its headquarters in Redwood
City, California.

2.    In or about April 2014, GI hired the defendant, **SCOTT MORRIS**, as a Technical
Support Analyst.  As part of his employment, GI granted Morris stock options to purchase no more
than 14,386 shares of common stock in GI.

3.    On approximately June 30, 2014, Morris signed a stock option agreement setting
forth the terms of buying and selling stock pursuant to his employee stock options.  The agreement
states in pertinent part that if Morris exercised his options and purchased shares of GI stock, he
could not thereafter sell, pledge or otherwise transfer such shares to a third party without first
offering them to GI.

1

4.     On approximately September 1, 2017, Morris' employment with GI was terminated.

B.     Scheme to Defraud

5.     Beginning in or around September 2015 and continuing until on or about December 2016, Morris knowingly and intentionally devised and executed a scheme and artifice to defraud various victims, including S.M., T.G. and B.B, and to obtain money from them by means of materially false and fraudulent pretenses, representations and promises related to the sale of GI stock wherein Morris accepted purchase funds but failed to deliver the stock certificates to purchasers as required to consummate the sales.

6.     At no time during the below described scheme to defraud did Morris exercise any of his stock options or own any shares of G.I. stock.

    **A.     Transactions with S.M.**

7.     It was part of the scheme to defraud that, between approximately April 2016 and June 2016, Morris sold to victim S.M. 17,000 shares of common stock in GI for a total purchase price of $42,500. The first sale transaction of 7,000 shares for $17,500 occurred on or about April 30, 2016. The second sale transaction of 10,000 shares for $25,000 occurred on or about June 17, 2016.

8.     It was further part of the scheme to defraud that, in negotiating the stock sales with S.M., Morris represented to S.M. in email messages that he owned 31,000 shares of GI stock and that he needed to sell the shares due to various family issues, including that his father was dying and his uncle was in rehabilitation. In truth and fact, Morris owned no shares of GI stock at the time he proposed the sale to S.M. Through further email correspondence, Morris and S.M. executed stock purchase agreements, and Morris provided instructions for S.M. to wire transfer

2

funds to Morris's personal bank account at a PNC branch address in Jackson, Mississippi. On or about April 30, 2016, S.M. wired $17,500 from S.M.'s Commerce Bank account to Morris's PNC Bank account ending in 3774. On or about June 17, 2016, S.M. wired $25,000 from S.M.'s Commerce Bank account to Morris's PNC Bank account ending in 3774.

10.     It was further part of the scheme to defraud that, following the above described sales, on or about September 9, 2016, Morris sent an email message to S.M. that included what Morris falsely represented to be a forwarded e-mail message sent from the address <essuccess@GI.com> to Morris. In truth and fact, GI has no internal email address of <essuccess@GI.com>. The forged email stated as follows:

> *Hey Scott, This note is written confirmation that your purchase of ten thousand (10,000) shares submitted on August 1st, 2016 has been approved and processed. Please use this email as your confirmed ownership of the ten thousand shares. As in line with GI's stock purchase agreement, please be prepared for a 8-10 week turnaround time in procurement of the physical share certificates.*

11.     It was further part of the scheme to defraud that Morris never provided S.M. with any stock certificates for the 17,000 shares.

**B.     Transaction with T.G.**

12.     It was further part of the scheme to defraud that, in approximately September 2015, Morris began communicating with victim J.G. regarding the proposed sale of GI shares. J.G. referred Morris's offer to his father, T.G.

13.     It was further part of the scheme to defraud that, on or about September 16, 2016, Morris and T.G. entered into a stock purchase agreement wherein Morris sold 4,000 shares of common stock in GI to T.G. for $10,000. At the time of the proposed sale, Morris did not own any GI shares. As part of this transaction, T.G. paid $10,000 cash to Morris at a residence in Fenton, Missouri.

3

14.     Morris never provided T.G. with any stock certificates for the 4,000 shares.

**C.     Transaction with B.B.**

15.     It was further part of the scheme to defraud that, on or about December 9, 2016, Morris entered into a stock purchase agreement with victim B.B. to sell 5,000 shares of common stock in GI for $10,500.

16.     It was further part of the scheme to defraud that Morris provided instructions for B.B. to wire funds to Morris's personal bank account at a PNC branch address in Jackson, Mississippi. On or about December 9, 2016, B.B. wired $10,500 from B.B.'s PNC Bank account to Morris's PNC Bank account ending in 3774.

17.     It was further part of the scheme to defraud that on or about May 1, 2016, Morris sent a text message to B.B. showing an apparent screenshot of an email message from <ldevall@GI.com> to Morris stating as follows:

> *Hi Scott: As you were hired before Jan 1, 2015 you are able to sell*
> *your shares or transfer them once you purchase them. Let me know*
> *if you have any questions. Thanks!*

18.     Morris never provided B.B. with any stock certificates for the 5,000 shares.

C.     Wire Transactions

19.     On or about the dates listed below, having devised the foregoing scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**SCOTT MORRIS,**

the defendant herein, did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, namely the following:

4

| COUNT | DATE | VICTIM | WIRE TRANSACTION |
|---|---|---|---|
| I | April 30, 2016 | S.M. | $17,500 wire transfer from S.M.'s Commerce Bank account to PNC Bank account ending in 3774 |
| II | June 17, 2016 | S.M. | $25,000 wire transfer from S.M.'s Commerce Bank account to PNC Bank account ending in 3774 |
| III | September 9, 2016 | S.M. | Email message from Morris to S.M. containing a forwarded message from <essuccess@GI.com> |
| IV | December 9, 2016 | B.B. | $10,500 wire transfer from B.B.'s PNC Bank account to PNC Bank account ending in 3774 |

In violation of Title 18, United States Code, Sections 1343.

## FORFEITURE ALLEGATION

The United States Attorney further alleges there is probable cause that:

1.      Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Counts I-IV, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2.      Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

3.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

     e.      has been commingled with other property which cannot be divided

without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.


_____

FOREPERSON


                               JEFFREY B. JENSEN
                               United States Attorney


                               _____

                               GWENDOLYN E. CARROLL, NY 4657003
                               Assistant United States Attorney
                               111 South 10th Street, Room 20.333
                               St. Louis, Missouri 63102
                               (314) 539-2200


                               _____

                               KYLE T. BATEMAN, D.C. Bar 996646
                               Assistant United States Attorney
                               111 South 10th Street, Room 20.333
                               St. Louis, Missouri 63102
                               (314) 539-2200

6